## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **HOWARD PURHAM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 14-CV-3232** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

In July 2014, Petitioner Howard Purham filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Motion) (d/e 1).  Because Petitioner cannot show prejudice on his ineffective-assistance-of-counsel claim, the Motion is DENIED.

## I. FACTS

### A.  Petitioner Pleads Guilty in Case No. 12-CR-30019

On February 8, 2012, a federal grand jury charged Petitioner with several offenses, including conspiring with his brother Sylvester Purham to distribute 280 grams of cocaine base (crack) (Count 1).  United States v. Howard Purham, Case No. 12-CR-

30019, Indictment (d/e 21) (hereinafter Case No. 12-CR-30019).
On May 11, 2012, Petitioner entered a plea of guilty to Count 1 of
the Indictment pursuant to a Plea Agreement.  Case No. 12-CR-
30019, Minute Entry of May 11, 2012; Plea Agreement (d/e 30).

The Plea Agreement advised Petitioner of the elements of the
charge and the potential penalties, the latter of which included a
mandatory minimum of 10 years and up to life in prison.  Case
No. 12-CR-30019, Plea Agreement ¶¶ 6, 7.  The Plea Agreement
informed Petitioner that the Court would calculate his offense level
and criminal history category under the United States Sentencing
Guidelines and would use those calculations to arrive at an
advisory sentencing range.  Id. ¶ 14.  Further, the Court would
consider that advisory sentencing range, as well as the other
factors listed in 18 U.S.C. § 3553(a), to determine Petitioner's
specific sentence.  Id.  Paragraph 16 of the Plea Agreement
specifically provided that the Court would make its own
independent determination of the applicable advisory Sentencing
Guideline range and would impose whatever sentence the Court
deemed appropriate.  Id. ¶ 16.

In Paragraph 17 of the Plea Agreement, the Government reserved the right to make a motion for a deviation from the Sentencing Guidelines if Petitioner provided substantial assistance in the investigation or prosecution of other criminal offenses. As a condition of the Plea Agreement, Petitioner agreed to continue to cooperate with law officials pursuant to his Cooperation Agreement. Id. ¶ 19; see also January 27, 2012 letter regarding cooperation, attached to the Plea Agreement.

The United States agreed to move to dismiss the remaining counts of the Indictment at sentencing. Plea Agreement ¶ 20. The United States also agreed not to oppose a sentence at the low end of the applicable advisory Sentencing Guideline range. Id. ¶ 21. Petitioner remained free to recommend whatever sentence he deemed appropriate. Id.

The Plea Agreement also contained waivers of the right to appeal and the right to collaterally attack the conviction and sentence. Id. ¶¶ 11, 12. Petitioner acknowledged the voluntariness of the waiver and confirmed he had not been coerced, threatened, intimidated, or involuntarily persuaded to waive his appeal and collateral attack rights. Id. ¶ 13.

In the Plea Agreement, Petitioner acknowledged that he was waiving his constitutional rights to plead not guilty, to proceed to jury trial, to confront and cross-examine adverse witnesses, and to decline to testify without an inference of guilt.  Id. ¶ 25.  He also acknowledged his right to counsel.  Id. ¶ 25(c).  Petitioner signed the Plea Agreement immediately after the following statement:

> I have read this entire Plea Agreement carefully and have discussed it fully with my attorney.  I fully understand this Agreement, and I agree to it voluntarily and of my own free will.  I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this Agreement about my criminal conduct are true.  No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, expressed or implied, to influence me to plead guilty other than those stated in this written Plea Agreement.  I am satisfied with the legal services provided by my attorney.  I understand that by signing below I am stating I agree with everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

Plea Agreement ¶ 28 (emphasis added).

On May 11, 2012, Petitioner appeared before United States Magistrate Judge Byron G. Cudmore.  Petitioner signed a Notice Regarding Entry of Plea of Guilty consenting to Judge Cudmore conducting the Rule 11 proceedings.  Case No. 12-CR-30019 (d/e 31).

At the Change of Plea hearing, Magistrate Judge Cudmore reviewed the Plea Agreement with Petitioner.   Petitioner was sworn. Case No. 12-CR-30019, Change of Plea Hearing Tr. at 5 (d/e 122). Judge Cudmore engaged in the following colloquy with Petitioner's attorney, Adam Giganti, and Petitioner:

> THE COURT:   . . . Have you received a copy of the indictment and reviewed the same with your client?
>
> MR. GIGANTI:  I have.
>
> THE COURT:  Reviewed with your client the Government's evidence against him?
>
> MR. GIGANTI:  I have.
>
> THE COURT:  Reviewed with your client any legal or factual defenses he may have?
>
> MR. GIGANTI:  Yes.  Your Honor.
>
> THE COURT:  Reviewed with your client the applicable advisory sentencing guidelines?
>
> MR. GIGANTI:  Yes.
>
> THE COURT:  Reviewed with your client the plea agreement that you negotiated?

> MR. GIGANTI:  Yes, I have.
>
> THE COURT:  Thank you.
>
> Mr. Purham, have you, in fact, discussed all of those things with your attorney?
>
> THE DEFENDANT:  Yes, sir.

Tr. at 14.

Upon inquiry, Petitioner indicated he understood the essential elements of the charge and that the maximum penalty was not less than ten years and up to life in prison.  Id. at 15, 17.  Petitioner also indicated that he understood that the sentencing judge would be using the advisory Sentencing Guidelines to determine his sentence.  Id. at 18-19.

Judge Cudmore also confirmed that Petitioner had not been promised a specific sentence:

> THE COURT: Has anyone, including Mr. Giganti, promised you exactly what your sentence is going to be?
>
> THE DEFENDANT: No, sir.

Id. at 19.

Petitioner confirmed that he had read and discussed the Plea Agreement before signing it.  Tr. at 19.  Petitioner understood that

the Government reserved the right to make a motion to go below the

mandatory minimum if the Government finds Petitioner's

cooperation substantial.  <u>Id.</u> at 22.  Regarding cooperation, Judge

Cudmore engaged in the following discussion:

> THE COURT:  Paragraph 19 says you're gonna
> cooperate fully.  Do you understand what cooperation is?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  That means cooperation against
> anyone, including the co-defendant.  Understood?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  It's—I often say it's like diving into a
> deep swimming pool from a tall diving board.  Do you
> understand the analogy?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT: You don't just get your toes wet, you
> get completely immersed in the cooperation.
> Understood?
>
> THE DEFENDANT:  Yes, sir.

THE COURT:  If you know ten things about ten people, you tell about all ten things about all ten people. Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  You don't say nine and you don't make up eleven.  You know what I mean?

THE DEFENDANT:  Yes, sir.

* * *

THE COURT:  . . . [I]s the cooperation ongoing, Mr. Bohm?

MR. BOHM:  Yes, it is, Your Honor.

THE COURT:  Because your cooperation is ongoing, Paragraph 23 is very important.  It is very important to you, Mr. Purham, that you continue to cooperate in however you have been cooperating.   Truthful, complete, hundred percent.  Don't make things up, don't hold back things.  If you're asked to testify, you testify. Understood?

THE DEFENDANT:  Yes, sir.

THE COURT:  Because what can happen, if you balk at cooperating, or if the Government can prove that

your cooperation has been untruthful or incomplete,

they can move through Paragraph 23 to vacate or void

the plea agreement. Understood?

     THE DEFENDANT:  Yes, sir.

     THE COURT:  But your guilty plea would stick.

Understood?

     THE DEFENDANT:  Yes, sir.

     THE COURT:  And in theory, this paragraph is

broad enough.  Paragraph 23 is broad enough, if you

would be—post-sentencing if you would balk at

cooperating, the Government could come back in and

move to vacate the agreement, vacate sentencing, and

have you re-sentenced.  Do you understand that?

     THE DEFENDANT:  Yes, sir.

     THE COURT:  It says all that in Paragraph 23.  Any

questions, sir?

     THE DEFENDANT:  No, sir.

Tr.  23-24, 25-26.

    Magistrate Judge Cudmore asked Petitioner if there was

anything else Petitioner wanted to discuss that caused Petitioner to

plead guilty.  Petitioner responded, "No, sir."  Tr. at 27.  Petitioner denied that there were any terms of the Plea Agreement that he did not understand.  Tr. 28.  Petitioner also affirmed that, other than the Plea Agreement and the Cooperation Agreement, no other inducements from the Government caused him to want to plead guilty.  Id. at 28.

Following the hearing, Magistrate Judge Cudmore entered a Report and Recommendation recommending that the plea of guilty be accepted.  Case No. 12-CR-30019, Report and Recommendation (d/e 33).  On May 31, 2012, this Court accepted Petitioner's plea of guilty to Count 1 of the Indictment and adjudged Petitioner guilty of the offense.  See Case No. 12-CR-30019, May 31, 2012 Text Order.

## B.  Petitioner Stops Cooperating

Petitioner initially cooperated with the Government pursuant to a Cooperation Agreement.  Case No. 14-CV-3232, Giganti Aff. ¶¶ 3, 4 (d/e 13-1);  Case No. 12-CR-30019, Gov't Sentencing Commentary at 2 (d/e 57).  In July 2013, however, Petitioner indicated he would no longer honor his Cooperation Agreement with the Government.  Giganti Aff. ¶ 11; see also Gov't Sentencing Commentary at 2.  Giganti advised Petitioner that he would not

receive any recommendation from the Government for a downward departure and would not receive the previously estimated sentencing range of 10 to 12 years.  Giganti Aff. ¶ 11.  Giganti also told Petitioner that his sentencing range would likely increase because of his refusal to cooperate and "his actions concerning a threat to a possible witness."  Id.

**C.     The Probation Office Prepares the Presentence Investigation   Report Providing for an Advisory Sentencing Guideline Range of 235 to 292 months**

On August 6, 2013, the Probation Office completed the Revised Presentence Investigation Report (PSR).  The PSR calculated Petitioner's base offense level at 32.  Petitioner received enhancements for making threats of violence against Jerrica Jones and Sydney Reed, using numerous residences for the sole purpose of distributing crack cocaine, acting as a manager, and using a minor to commit a crime.  Case No. 12-CR-30019, PSR ¶¶ 31-36 (d/e 70).  After a three level reduction for acceptance of responsibility, Petitioner's total offense level was 38.  With a criminal history category of I, Petitioner's advisory sentencing guideline range was 235 to 292 months.

**D.     The Court Holds the Sentencing Hearing and Ultimately Sentences Petitioner to 240 Months**

On August 22, 2013, the Court held the sentencing hearing and addressed the parties' objections to the PSR.  In particular, the Government objected to Petitioner not receiving an additional two-level enhancement for obstruction of justice based on an August 2013 telephone call Petitioner made to former co-conspirator Shiya White instructing her to contact Jerrica Jones, another former co-conspirator, and ask Jones not to testify to the threats that members of the conspiracy made to her.  See Case No. 12-CR-30019, Addendum II to the PSR (d/e 70, p. 21 of 30).  The Government also objected to Petitioner receiving a three-level reduction for acceptance of responsibility.  Id.  Petitioner raised several objections, including objections to the drug amount calculated, the enhancement for threats that members of the conspiracy made to Jerrica Jones and Sydney Reed, the reference to gang affiliation, and the guideline calculations.  Id. at p. 22-23 of 30.

After considering the parties' objections and the testimony presented, the Court imposed an additional two-level enhancement

for obstruction of justice based on Petitioner instructing White to contact Jones and ask Jones not to testify.  Case No. 12-CR-30019, Sentencing Tr. at 123-24; Addendum II to the PSR (d/e 70, p. 21 of 30).  The Court also refused to give Petitioner the three-level reduction for acceptance of responsibility because his "objections were meritless and his actions were inconsistent with Acceptance of Responsibility."  Addendum II to the PSR (d/e 70, p. 21-22 of 30).  Additionally, Petitioner's obstruction of justice was "inconsistent with accepting responsibility for his actions"  Id. at 22 of 30.

The Court's rulings increased Petitioner's offense level to 43.  See Case No. 12-CR-30019, Sentencing Hearing Tr. at 124, 126 (d/e 77).  With a criminal history category of I, Petitioner's advisory guideline range was life.  Id. at 126.  However, the Court rejected the 18:1 crack to powder disparity in the Sentencing Guidelines and chose to apply a 1:1 ratio.  Id. at 125-26.  The Court noted that this ruling "would make the total offense level 37, which would result in a guideline range of 210 to 262 months."  Id.  at 126.

The Government did not move for a downward departure for substantial assistance because Petitioner both obstructed justice and refused to continue to cooperate.  Id.  at 127.  The Government

did, however, agree to continue to abide by the Plea Agreement and moved to dismiss the remaining counts of the Indictment.  Id. at 128.

The Government recommended a sentence of 240 months.  Id. Petitioner asked for a sentence at the low end of the sentencing range.  Id. at 136.  The Court sentenced Petitioner to 240 months' imprisonment.  Id. at 144.

## E. Petitioner Files his § 2255 Petition Raising Ineffective-Assistance-of-Counsel Claims in Case No. 14-CV-3232

In July 2014, Petitioner filed his § 2255 Petition in this case. In his Petition, Petitioner raises two grounds.  First, Petitioner asserts that he asked his attorney if there was anything that could happen to enhance Petitioner's anticipated advisory guideline sentencing range of 151 to 188 months (which corresponds to an offense level of 34 and a criminal history score of I).  Case No. 14-CV-3232, Petition ¶ 12 Ground One (d/e 1).  His attorney told him "no."  Id.  Second, Petitioner asserts that his attorney told him that, if he signed the Plea Agreement, he would not receive anything more

than 10 to 12 years' imprisonment.[1]  Petition ¶ 12 Ground Two (d/e 1).  Petitioner asks for a new plea agreement and a new sentence.[2]

In August 2014, the Government filed a Motion to Dismiss on the ground that the § 2255 Petition was barred by Petitioner's waiver of his right to collaterally attack his conviction and sentence. Mot. to Dismiss (d/e 3).  Following additional briefing, the Court ultimately found that Petitioner's claims of ineffective assistance of counsel were not barred by the collateral attack waiver in the Plea Agreement.  Opinion (d/e 9).  On January 30, 2015, this Court appointed counsel to Petitioner.

On March 9, 2015, the Government filed its Response in Opposition to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (d/e 13).  On June 30, 2015, after receiving several extensions, counsel for Petitioner filed a Supplemental Motion Pursuant to 28 U.S.C. § 2255 (d/e 17).  The Court finds that an evidentiary hearing is not required because the Petition, files, and record of the case

---

[1] Petitioner now asserts in his Affidavit that Giganti told him that, with cooperation, Petitioner could receive a sentence of less than 10 years.  Pet. Aff. ¶ 2 (d/e 17).  The Court does not believe this changes the analysis.

[2] Petitioner also challenged the method by which the Magistrate Judge purportedly accepted Petitioner's plea (see Resp. d/e 5), but this Court summarily denied that claim (see Opinion d/e 9).

conclusively show Petitioner is not entitled to relief.  28 U.S.C.
¶ 2255(b).

## II. ANALYSIS

To show ineffective assistance of counsel in the context of a
guilty plea, a petitioner must demonstrate: (1) his counsel's
performance fell below an objective standard of reasonableness; and
(2) there is a reasonable probability that, but for counsel's errors,
the petitioner would not have pleaded guilty and would have
insisted on going to trial.  Bethel v. United States, 458 F.3d 711,
715 (7th Cir. 2006).  A court need not address the question of
counsel's performance if it is easier to dispose of the claim due to a
lack of prejudice. Strickland v. Washington, 466 U.S. 668, 697
(1984); Taylor v. Bradley, 448 F.3d 942, 949 (7th Cir. 2006).

"A reasonably competent counsel will attempt to learn all of
the facts of the case, make an estimate of a likely sentence, and
communicate the results of that analysis before allowing his client
to plead guilty." Moore v. Bryant, 348 F.3d 238, 241 (7th Cir.
2003).  A gross mischaracterization of the sentencing consequences
"may strongly indicate deficient performance," although it is not
proof of deficiency.  Bethel, 458 F.3d at 717.  That is, an inaccurate

prediction is not enough to meet the standard for ineffective assistance of counsel.  The court must determine whether counsel made a good-faith effort to learn the facts and estimate the sentence.  Id.

In his Petition, Petitioner asserts that counsel told Petitioner that no enhancements would be applied to Petitioner's sentencing guideline range of 151 to 188 months.   See also Pet. Supp. Mot. at 2 (d/e 17) (counsel did not discuss possible enhancements or revocation for breach of the plea agreement).   However, the Probation Office, in the PSR, applied several enhancements, which increased Petitioner's offense level and advisory sentencing guideline range.

Petitioner also claims that counsel told him that if Petitioner signed the Plea Agreement, Petitioner would receive no more than 10 to 12 years' imprisonment.  In his Supplemental Motion, Petitioner assets that counsel advised him he would receive a sentence of less than 10 years.  Pet. Supp. Mot. at 1.  The Court sentenced Petitioner to 20 years.  Petitioner now claims that, had he known that he would receive multiple enhancements and that he

would not receive the low end of his anticipated guideline range, he would have entered an open plea of guilty.

In this case, even if Petitioner could show that counsel's performance were deficient (an issue the Court need not decide), Petitioner cannot show prejudice. To show prejudice in the context of a guilty plea, Petitioner must establish with objective evidence a reasonable probability that, but for counsel's erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. <u>Bethel</u>, 458 F.3d at 717. The mere allegation that, but for counsel's erroneous advice, a petitioner would not have pleaded guilty and would have insisted on going to trial is insufficient to establish prejudice. <u>Berkey v. United States</u>, 318 F.3d 768, 772-73 (7th Cir. 2003). Instead, a petitioner must establish, through objective evidence, that a reasonable probability exists that he would have proceeded to trial. <u>Id.</u>

Here, Petitioner does not even consistently assert that, but for his counsel's advice, he would not have pleaded guilty and would have proceeded to trial. Instead, Petitioner asserts that he would have entered an open plea of guilty. <u>See</u> Supp. Motion at 2 (d/e 17); Petition at 12 (d/e 1) (requesting a new plea agreement);

Response at 1(d/e 5) (stating that but for counsel's advice, Petitioner would not have signed the Plea Agreement); but see Response at 1-2 (d/e 8) (stating that if he did not sign the plea agreement, he would have had a "better chance at trial" and requesting that his motion be granted so he can have "a fair try with my case and be sentence[d] with justice").  A petitioner does not establish prejudice by asserting that he would not have entered this particular plea agreement or could have negotiated a different plea.  Gargano v. United States, 852 F.2d 886, 891 (7th Cir. 1988) (a petitioner cannot show prejudice by alleging he would not have entered into that particular plea agreement); Bethel, 458 F.3d at 720 (same); but see Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (examining whether the attorney's advice was a decisive factor in the petitioner's decision to enter a conditional plea instead of going to trial or entering an unconditional plea).[3]

In any event, Petitioner cannot show prejudice because he cannot show that the allegedly deficient advice played a decisive factor in his decision to plead guilty.  Wyatt, 574 F.3d at 458

---

[3] Petitioner cites Missouri v. Frye, 132 S. Ct. 1399, 1209 (2012), but that case is distinguishable because it involved the failure to communicate a formal plea offer, in which case the petitioner must show he would have accepted the earlier plea offer had he been afforded effective assistance of counsel.

(finding that the allegedly deficient advice did not play a decisive factor in the defendant's decision to enter a conditional plea in light of the statements in his "petition to enter the conditional plea that his decision to plead was not tied to any particular sentence" and his statements at the plea hearing showing that his decision to "make the conditional plea was not predicated upon any specific sentence").  Petitioner's claims are belied by his statements in the Plea Agreement and at the Change of Plea hearing.  See Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000) (finding that the petitioner's argument that his counsel's advice rendered his plea involuntary was belied by his statements at the plea hearing, which are presumed truthful); United States v. Schaap, No. 2:12-cr-131, 2:14-cv-87, 2014 WL 4209441 at *6 (N.D. Ind. Aug. 26, 2014) (finding the petitioner's claim that counsel was ineffective by "promising a 10 year maximum term of imprisonment, but likely less," was "directly contradicted" by the plea agreement and the change of plea hearing).

The Plea Agreement and transcript of the Change of Plea hearing show that the allegedly deficient advice was not a decisive factor in Petitioner's decision to plead guilty.  Petitioner was advised

that he faced a mandatory minimum sentence of 10 years and up to life in prison.  Case No. 12-CR-30019, Plea Agreement ¶ 7; Change of Plea Hearing Tr. at 17.  Petitioner was told that the Court would calculate Petitioner's offense level and criminal history category under the Sentencing Guidelines and would use those calculations to arrive at an advisory sentencing range.  Plea Agreement ¶ 14; Tr. 18 (stating that "the sentencing judge will be using certain advisory Sentencing Guidelines to give advice as to where [his] sentence should fall").  Petitioner also indicated that he understood that the Plea Agreement did not bind the Court and that the Court "has the ability to do what the Court deems appropriate."  Tr. at 19-20.

Petitioner acknowledged that no promises or commitments had been made to him and no agreement had been reached, expressed or implied, to influence him to plead guilty, other than those stated in the Plea Agreement.  Plea Agreement ¶ 28.  At the hearing, Magistrate Judge Cudmore asked Petitioner whether anyone, including his attorney, had promised Petitioner a specific sentence, and Petitioner stated, "No, sir."  Tr. 19.  The Plea Agreement and the transcript of the Change of Plea hearing demonstrate that Petitioner's decision to plead guilty was not

predicated upon any specific sentence or particular application of the Sentencing Guidelines.  See Bethel, 458 F.3d at 718 (finding the defendant could not show prejudice because the district court advised the defendant "six or seven different ways that he could not rely on any particular predictions or discussion about a possible sentence when he entered his plea"); Thompson v. United States, 732 F.3d 826, 830 (7th Cir. 2013) (finding that "the district court's explanation of the sentencing process at [the petitioner's] plea colloquy removed any possible prejudice of [his counsel's] advice"); United States v. Martinez, 169 F.3d 1049, 1054 (7th Cir. 1999) (finding that although the defendant "asserts that he would not have pled guilty but for his attorney's flawed predictions, his Rule 11 hearing tells a different story.  Because of the great weight we place on these in-court statements, we credit them over his later claims").

Moreover, the record demonstrates another reason why Petitioner did not receive the sentence he hoped to receive. Following his guilty plea, Petitioner asked a former co-conspirator, Shiya White, to contact another co-conspirator, Jerrica Jones, and told White to tell Jones not to testify about the threats members of

the conspiracy had previously made to her.  <u>See</u> Case No. 12-30019, Addendum II to the PSR, (d/e 70, p. 21 of 30).  This conduct resulted in Petitioner receiving a two-level increase to his offense level for obstruction of justice.  Case No. 12-30019, Tr. at 124.  In addition, despite signing a Cooperation Agreement and being extensively advised about that Cooperation Agreement at the Change of Plea hearing, Petitioner informed the Government shortly before sentencing that he no longer wished to cooperate with authorities.  <u>See</u> Case No. 12-30019, Government's Sentencing Commentary p. 2 (d/e 57); Giganti Aff. (d/e 13-1).  Therefore, the Government refused to move for a downward departure.  This obviously affected the sentence Petitioner expected to receive (less than 10 years or 10 to 12 years) but was in no way related to any alleged ineffective assistance of counsel.

For all these reasons, the Court finds Petitioner is not entitled to relief on his ineffective assistance of counsel claim because he cannot demonstrate prejudice.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings For the United States District Courts, this Court

declines to issue a Certificate of Appealability.  A certificate may issue only if Petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Peterson v. Douma, 751 F.3d 524, 528 (7th Cir. 2014) (quotations and citations omitted).  Because the claims at issue do not satisfy this standard, the Court denies a Certificate of Appealability on all claims.

## IV. CONCLUSION

For the reasons stated, the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (d/e 1) is DENIED. The Court also DENIES a Certificate of Appealability on all claims.

ENTER: December 7, 2015

FOR THE COURT:

  s/Sue E Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE